STATE OF MAINE *vs.* MARGARET KIRBY.

In the trial of an indictment founded on the first clause of § 7, c. 124 of the R. S., the accused will be entitled to an acquittal if it be made to appear that the child was born dead.

ON EXCEPTIONS to the *pro forma* rulings of *Goddard*, J., of the superior court for the county of Cumberland.

INDICTMENT founded on the first clause of revised statutes, c. 124, § 7.

It was proved that respondent was delivered in secret of a still-born full-grown child, March 15, 1869, at Portland, which, if born alive, would have been a bastard, and concealed the same by throwing it immediately and secretly into a privy vault belonging to Martin Tighe, in Portland, where it was discovered some time after, on the same day, by a boy, who reported the fact to the police, who removed it and caused a coroner's inquest to be held upon it, in consequence of which concealment it was not known for several hours whether it was born dead, or was born alive and was mur-

dered; but the testimony of the physicians upon the inquest and on the trial showed that the child had been dead, and decomposition had commenced previous to birth. There was no evidence that the death of the child before its birth was occasioned by any voluntary act of respondent. Her counsel requested the presiding justice to instruct the jury that, it having been conceded by the government that the child was born dead, respondent could not be convicted of the offense charged. But the presiding judge declined to give the requested instruction, and instructed the jury *pro forma* that, by reason of her concealment of the death of her child, it was not known for some time after the discovery of its body whether it was born dead, or was born alive and was murdered, even though that time might not be long, the fact that it was afterwards known that the child was born dead would not relieve the respondent from the penalties of the statute, provided she had been willingly delivered in secret of said child, and said child would have been a bastard if it had been born alive, and she knew of its death and concealed the same.

The jury returned a verdict of guilty, and the respondent alleged exceptions.

*J. H. Williams,* for the respondent.

*N. Webb,* county attorney, *contra.*

TAPLEY, J. This is an indictment under the first clause of § 7 of c. 124, of the revised statutes, which provides that "if any woman is willingly delivered in secret of the issue of her body, which would be a bastard if born alive, and conceals the death thereof, so that it is not known whether it was born dead or alive, and was murdered, she shall be punished by imprisonment not more than three years, or by fine not exceeding one hundred dollars."

It was proved that the prisoner was delivered in secret of such issue, still born, and concealed the same by throwing it into a vault, where it was discovered the same day and examined by inquest, when it appeared the child had been dead several days before the

birth. These facts being proved, the prisoner contended she was entitled to a verdict of not guilty, but the presiding judge ruled otherwise.

1. The act applies to such issue of the body as was or would have been if born alive, a bastard, viz., issue begotten and born out of wedlock.

2. The offense consists in willingly being delivered of such issue in secret, and concealing the death of it, " so that it is not known whether it was born dead, or alive and was murdered."

Any other concealment is not within the prohibition of the statute. It must be effectual to this end.

It is contended by the government that there being some appreciable time between the concealment of the body and the discovery of the fact that it was dead and born dead, the offense was complete under the statute.

On the other hand it is contended that the fact that the discovery was made that the child was born dead, upon the same day of the concealment, and before these proceedings were instituted, constitute a defense, and entitle her to an acquittal; that the phrase " is not known " means " is not known at any time," instead of is not known at a particular period of time before trial.

The difference between counsel upon the construction of this sentence is of vital importance to the prisoner in this case. To what period of time then does the word " is " refer?

Tracing the statute back to 1696, we then find a provincial statute in these words:

" Whereas many lewd women that have been delivered of bastard children, to avoid their shame and to escape punishment, do secretly bury or conceal the death of their children, and after, if the child be found dead, the said women do allege that the said child was born dead, whereas it falleth out sometimes (although hardly it is to be proved) that the said child or children were murdered by the said women, their lewd mothers, or by their assent or procurement; Be it therefore enacted," &c., " that if any woman be delivered of any issue of her body, male or female, which if it

were born alive should by law be a bastard, and that she endeavor privately, either by drowning or secret burying thereof, or any other way, either by herself or the procuring of others, so to conceal the death thereof, that it may not come to light whether it were born alive or not but be concealed, in every such case the mother so offending shall suffer death as in case of murder, except such mother can make proof by one witness at least that the child whose death was by her so intended to be concealed was born dead." An. Chrs. & Laws, Mass. Bay, c. 38.

Under this act it will be seen that the act of concealment must have been an effectual one; "so . . . that it may not come to light, . . . but be concealed." That is such a concealment that it does not come to light but is concealed, whether the child was born dead, or alive and murdered; and even then if such mother "make proof by one witness at least that the child was born dead," she suffers no penalty.

If the proof of this fact by her entitled her to an acquittal, it would be a strange anomaly of the law if the same proof introduced by the prosecution did not produce the same results.

It is quite apparent that proof adduced at the trial that the child was born dead would, under this act, entitle the mother to an acquittal.

The causes which led to the passage of the act are recited in the preamble. The birth and death of the child could be proved, but the fact that it was or was not born alive in many cases could not be proved, by reason of the concealment of the fact by the mother. Her efforts to conceal the birth and death of the child would oftener prove unsuccessful, than her efforts to conceal the fact that it was born alive and murdered; hence under this statute whenever it appeared that such issue had been born and was dead, and the fact whether born dead or alive was effectually concealed by her acts, she was held responsible for its murder unless she could relieve herself by proof from one witness at least.

While the gist of the offense consists in the concealment of the death of the child, it is such a concealment as prevents

its being known that the child was born dead, or alive and was murdered.

As soon as these facts are made apparent, the futility of the effort to conceal is made apparent.

As before remarked, proof under this act that the child was born dead, entitled the mother to an acquittal, whether introduced by the prosecution or by the prisoner. If introduced by the prosecution the case failed, because it then appeared that the attempted concealment had been unsuccessful.

If introduced by the mother she was acquitted, because the law in its mercy allowed her to remove the veil of concealment and discharge herself from the crime of infanticide and murder. The fact sought was, has there been a murder committed?

The law said simply this, "issue has been born; that issue is now dead; whether it died before or after birth you are now concealing from us, therefore we hold you responsible for its death."

In 1785 a similar act was passed by the general court of Massachusetts, preceded by a similar preamble.

The first section provided for the punishment of a woman who should conceal her pregnancy, and be delivered in secret of such issue.

The second provided that "if any woman shall endeavor privately, either by herself or the procurement of others, to conceal the death of such issue of her body, which if it were born alive would by law be a bastard, so that it may not come to light whether it was born alive or not, or whether it was murdered or not, in every such case the mother so offending shall be set on the gallows with a rope about her neck for the space of one hour, and be further punished by being bound to the good behavior, at the discretion of the court."

The third section provided that these offenses might be embraced in an indictment for murder, and the verdict rendered as the proofs should require. 1 Laws of Mass. 222.

This act was copied into the acts of 1821 passed in this State, except so far as the modes of punishment were provided. Laws of Maine, c. 2, §§ 9, 10, 11.

As in the former statute the concealment must be such "that it may not come to light whether it was born alive or not, or whether it was murdered or not." The term "may not come to light" is the same phrase that is used in the statute of 1696, and is, we apprehend, another mode of expressing the idea "does not come to light." It is quite clear this is its signification in the former statute, and we see no evidence of design to change it in this.

In the revision of our statutes in 1841, it was provided "that if any woman shall willingly be delivered in secret of any issue of her body, which if born alive would be a bastard, and shall conceal the same, so that it may not be known whether it was born alive or not, or was murdered or not, she shall be punished," &c. (c. 160, § 11), and "in the indictment against a woman for the murder of her infant bastard child, she may also be charged with the offense described in the preceding sections; and if the jury on trial acquit her of the charge of murder, and find her guilty of the other offense, sentence shall be awarded against her for the same." c. 160, § 12.

These sections are incorporated into one in the present revision (c. 124, § 7), making no material alteration excepting changing the word "may" to "is," reading "so that it is not known," &c.

It will be perceived that in all the statutes from 1696 down, the concealment must be such "that it may (is) not be known," &c. This is a uniform provision in all of them, and the important inquiry in the case at the bar, namely, to what time does is refer to, we think is made more apparent by the light afforded by those statutes.

It is contended that "is not known" is fully met by any appreciable time during which there is a concealment and such ignorance of the fact. This is literally true; so it may be said if the fact be discovered at later period of time, it is not true. In the case at bar it was literally true for an hour or more it may be, but in an hour after, it was not true, and has not been true since, and "*is*" not now true.

The great end to be accomplished was the prevention and pun-

ishment of child-murder. As there would in many cases be great doubt whether in fact there was murder, if it appeared upon trial there were such doubts that the prisoner could not be convicted, she was not allowed to go unpunished, if these doubts were occasioned by her own machinations. If, however, all doubts were removed by proof that no offense had been committed, there was no occasion to punish. The act of 1696 required this to be proved by at least one witness when offered in defense. None of the acts since have limited the proofs, but have left it to be proved as any other fact by circumstantial evidence or otherwise.

Upon a careful consideration of the statute and its antecedents, we think the phrase " so that it is not known " means so that it is not known at any time past or present.

To hold otherwise would be to very essentially change the act since its origin, and involve the case in many intricacies and embarrassments.

Inquiry would at once arise, how soon must the mother make public the fact? How shall she make public the fact? Is her own declaration sufficient, or must she make an exhibition of the body? If she must make an exhibition of the body, to whom must she make it? To some person who can tell whether it was "born dead, or alive and was murdered," or may she exhibit it to some person who cannot tell these facts by examination? In fine, must she exhibit it at all, or say a single word about it until called upon for explanation? May she not wait until investigation is set on foot, and then state the facts? What good can come of publicity until investigation is desired? Who shall call upon her and require her explanation? Must she answer the first over-curious, meddlesome, inquisitive scandal-monger, or be subjected to the penalty, or may she decline answering until some officer of the law shall require of her an answer? Or suppose she does conceal for a time, but before any knowledge of the birth of the child reaches any one she repents and immediately discovers the truth, has she then become liable to the penalty? Was the offense complete during such time as she alone knew of the birth, so that subsequent information by

her would not save the penalty ? A great variety of cases may be supposed which will indicate some of the embarrassments attendant upon a construction which will carry the act beyond its manifest scope in its original form.

We think the exceptions should be sustained.

APPLETON, C. J., CUTTING, DICKERSON, BARROWS, and DANFORTH, JJ., concurred.